**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JENNIFER KELLER,

          Plaintiff,                          Case No. _____

v.                                       Hon.

MICHIGAN
DEPARTMENT OF
CORRECTIONS,

          Defendant.

_____

Fabiola Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
fgalguera@nachtlaw.com

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff, Jennifer Keller, by and through her attorney, NACHTLAW, P.C.,

hereby alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Jennifer Keller is an individual who resides in Mulliken,

Eaton County, Michigan.

2.    Defendant Michigan Department of Corrections ("MDOC") is an agency

of the State of Michigan with its principal office located at 206 East Michigan

Avenue, Lansing, Michigan 48933.

3.      The events underlying this Complaint occurred in – and Defendant's registered agent is located in – Ingham County, Michigan, within the Western District of Michigan, Southern Division.

4.  This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

6.  Plaintiff timely filed a Charge of Discrimination on January 23, 2025, which generated a Notice of Right to Sue dated April 29, 2026. This matter represents a continuing pattern of discrimination.

**FACTUAL ALLEGATIONS**

7.      Plaintiff Jennifer Keller has been employed by Defendant MDOC since August 5, 2012.

8.      Plaintiff currently works as a Departmental Analyst in the Office of Research and Planning, located at 206 East Michigan Avenue, Lansing, Michigan 48933.

9.      Plaintiff is supervised by Departmental Manager Cathleen Evenson.

10.    Plaintiff has a disability within the meaning of the Persons with

Disabilities Civil Rights Act.

11.    Plaintiff suffers from multiple sclerosis, a chronic debilitating disease that affects her nervous system.

12.    Plaintiff has a compromised immune system and a weakened immune system that causes her to get sick more often than average, take longer to recover from illness than average, and often experience flare-up symptoms caused by brain lesions, including temporary blindness in her right eye.

13.    When Plaintiff was first hired in her current position on July 12, 2020, she was fully remote.

14.    Plaintiff performed all essential functions of her position successfully while working fully remote.

15.    The essential function of Plaintiff's position is to perform the implementation and maintenance of computer applications for the Department of Corrections, including providing professional research and analysis in the development, implementation, maintenance, and user support for the Corrections Offender Management System (COMS) application modules and providing technical support for systems.

16.    These duties can all be performed remotely.

17.     On July 25, 2021, Plaintiff started coming into the office one day per

week.

18.    After Plaintiff started coming into the office, she began contracting illnesses constantly, including numerous viral sinus infections, viral bronchitis several times, pneumonia, and a double ear infection.

19.    When Plaintiff gets sick, she experiences severe symptoms including fever, very painful body aches, horrible cough, inability to catch her breath, complete exhaustion, headache, congestion, runny nose, tightness in her chest, sore throat, sometimes complete loss of her voice, and inability to sleep because she cannot breathe.

20.    During the 16-month period when Plaintiff worked 100% remote, she used 73.75 hours of sick leave, which averaged 4.6 hours per month.

21.    Since Plaintiff returned to working in-office one day per week, the amount of sick leave she has had to use quadrupled to 293.95 hours, which averages 11.9 hours per month over a 25-month period.

22.    Approximately half of that 293.95 hours was during the time when everyone was wearing PPE.

23.    Plaintiff ran out of sick leave and had to use annual leave to cover part of the time she was off, and there were several days when she was horribly sick but still worked at home.

24.    On July 19, 2023, Plaintiff's primary care physician provided documentation to Defendant recommending that Plaintiff work from home to lessen exposure.

25.    The physician's note stated that Plaintiff has multiple sclerosis and that the necessary accommodation would be remote work from home.

26.    The physician's note stated that increased exposure to the general public would cause the possibility of increased illness as Plaintiff can pick up illnesses easily when exposed.

27.    On August 21, 2023, Defendant denied Plaintiff's accommodation request.

28.    Defendant stated that the reason for the denial was that Plaintiff's position was established to work in the office, not a 100 percent remote position.

29.    Defendant's ADA Coordinator Toya Williams admitted that no undue hardship would be caused by transitioning Plaintiff to a fully remote position.

30.    It was shared with Plaintiff that "it is Department's policy to deny everything that comes in and deal with it if people take it to court."

31.    Unfortunately, on March 22, , 2024, Plaintiff experienced a miscarriage.

32.    Plaintiff was required to undergo a surgical evacuation procedure on March 26, 2026 as the result of the untimely death of her baby.On the morning of April 3, 2024, Plaintiff submitted an FMLA request relating to her pregnancy, more

specifically her miscarriage.

33.    Plaintiff submitted documentation from her medical provider stating her need to take  time off due to her miscarriage.

34.    On April 3, 2024, Defendant denied Plaintiff's FMLA request.

35.    Defendant stated that the reason for the denial was because Plaintiff's medical condition does not qualify under FMLA.

36.    Plaintiff submitted additional documentation from her medical provider regarding her need for leave due to the miscarriage.

37.    Defendant again denied Plaintiff's request for leave, this time without providing a reason.

38.    On December 6, 2024, Plaintiff submitted a Disability Accommodation Request to Human Resources requesting to work 100% remote from home.

39.    The stated reasons for the accommodation request included recurrent illness, weakened immune system, frequent medical appointments, and recovery time.

40.    At the time of the request, Plaintiff was working a hybrid work schedule that included working remotely 50% of the pay period and in the office 50% of the pay period.

41.    On December 6, 2024, Plaintiff's immunologist provided documentation

supporting her accommodation request.

42.    On December 13, 2024, Plaintiff's medical provider supplemented the request form identifying the medical condition as "Allergic Rhinitis."

43.    On December 20, 2024, Plaintiff's immunologist provided a second documentation of her disability and need for accommodation.

44.    Both the December 6, 2024 and December 20, 2024 documentation from Plaintiff's immunologist identified the major life activities impacted by Plaintiff's condition.

45.    On January 8, 2025, Defendant's ADA Coordinator Toya Williams sent an email to Plaintiff requesting clarification from her medical provider, specifically the name of the medical condition, any potential alternative accommodations, and if no alternatives were available, an explanation as to why.

46.    Defendant gave Plaintiff only seven business days to provide medical documentation before denying her accommodation request.

47.    Defendant knew that retrieving Plaintiff's medical documentation would be a lengthy process.

48.    Plaintiff notified Defendant that she was experiencing difficulties retrieving her medical documentation.

49.    Plaintiff nonetheless notified Defendant that she suffers from diseases

associated with a weakened immune system and that she gets sick more often than average, takes longer to recover from illness than average, and often experiences flare-up symptoms caused by her brain lesions, including temporary blindness in her right eye.

50.    Plaintiff stated that being constantly sick forces her to use sick leave which makes it impossible for her to do her job.

51.    During the ADA process, Plaintiff specifically stated that she "would accept working in an office, but not a shared one [as it] defeats the purpose — the point of working in an office was to lessen exposure, which does not happen with a shared office."

52.    On January 27, 2025, Plaintiff communicated to Defendant that her medical provider preferred to receive questions via fax rather than email.

53.    On January 28, 2025, HR Manager Katlyn Saylor faxed a letter to Plaintiff's medical provider requesting the following: name of the medical condition that compromises Plaintiff's immune system, what major life events are impacted by the condition, and identify alternative accommodations that would allow Plaintiff to work in the office.

54.    The information requested on January 28, 2025 regarding major life events impacted by Plaintiff's condition had already been provided to Defendant at least twice before, first on December 6, 2024, and second on December 20, 2024.

55. Defendant continuously requested repeat information already provided by Plaintiff's medical providers to the point where Plaintiff's medical providers no longer believed they could hold a constructive dialogue with Defendant.

56. Plaintiff's medical providers had provided multiple copies of ADA recommendation forms to Defendant prior to January 28, 2025.

57. Many of Plaintiff's medical providers had, on multiple occasions, sent multiple copies, faxes, and emails to Defendant.

58. Every time Plaintiff's medical provider sent in medical documentation of her requirement for FMLA leave or ADA accommodations, Defendant followed up to request additional clarifying information, sometimes asking for information already listed on the forms Defendant had received.

59. On February 10, 2025, Plaintiff's medical provider's office manager indicated that they felt they had already answered everything on the form, stating that the major life activity is immune system and the diagnosis is allergic rhinitis, and that allergic rhinitis affects the immune system because when a person has allergies that are constantly triggered, it messes with the immune system and the person gets sick more often.

60. On February 12, 2025, Plaintiff expressed fear that she would be disciplined for running out of leave because of illness.

61. Plaintiff stated that she was out of sick leave and had only 32 hours of

annual leave remaining.

62.     Plaintiff stated that she had worked for Defendant for 14 years and had never been disciplined for anything, that she works hard and does not cause trouble, but was now afraid she would end up being disciplined for running out of leave because of illness when she was trying so hard to do everything right.

63.     Defendant proposed several alternative accommodations to support Plaintiff while working in the office, including wearing a mask, frequent sanitizing of the work area, and finding Plaintiff an enclosed office to work in.

64.     Plaintiff had already tried wearing PPE, frequent sanitizing of the work area, and frequent hand washing, and those measures had never prevented her from getting sick.

65.     Defendant offered Plaintiff a shared office rather than an office assigned exclusively to her.

66.     Plaintiff declined the shared office because it would not lessen exposure and would defeat the purpose of the accommodation.

67.     On February 18, 2025, Defendant stated that it was not able to provide Plaintiff with an office that was only assigned to her because Plaintiff only worked in the office 50% of the time and that the office could be sanitized after each use.

68.     On February 24, 2025, Defendant denied Plaintiff's accommodation

request based on the medical provider's failure to provide the requested additional information to support the need for such an accommodation.

69.    Defendant never gave Plaintiff an opportunity to follow up with her request and provide additional documentation after the denial.

70.    Plaintiff is aware of non-disabled employees who have had no issue requesting leave or receiving accommodations, formal or informal.

71.    Based on the treatment of Plaintiff before and after entering the protected class,  Plaintiff was subjected to disparate treatment based on her disability.

72.    Plaintiff continues to be subject to the same discrimination, as she continues to suffer negative impacts directly stemming from Defendant's repeated and unjustified denial of her accommodations.

## COUNT I
**Failure To Accommodate Disability In Violation Of The Michigan Persons With Disabilities Civil Rights Act**

73.    Plaintiff incorporates by reference all preceding paragraphs.

74.    The Michigan Persons with Disabilities Civil Rights Act guarantees the opportunity to obtain employment without discrimination because of a disability. MCLS § 37.1102

75.    Except as otherwise provided, a person shall accommodate a person with a disability  for purposes of employment unless the person demonstrates that the

accommodation would impose an undue hardship. MCLS § 37.1102

76.    An employment agency shall not fail or refuse to refer for employment, or otherwise discriminate against an individual because of a disability or classify or refer for employment an individual on the basis of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position. MCLS § 37.1203

77.    Plaintiff has a physical impairment that substantially limits one or more major life activities, including her immune system function.

78.    Plaintiff is a person with a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

79.    Plaintiff requested a reasonable accommodation from Defendant, specifically to work remotely from home, in July 2023, December 2024, and January 2025.

80.    The requested accommodation was reasonable, as demonstrated by Plaintiff's successful performance of all essential job functions while working fully remote from July 2020 through July 2021.

81.    The requested accommodation would not impose an undue hardship on Defendant, as admitted by Defendant's own ADA Coordinator.

82.    Defendant failed to engage in a good faith interactive process with

Plaintiff regarding her accommodation requests.

83. Defendant repeatedly requested the same information from Plaintiff's medical providers that had already been provided multiple times.

84. Defendant gave Plaintiff an unreasonably short timeframe of seven business days to provide medical documentation.

85. Defendant denied Plaintiff's accommodation requests in July 2023 and February 2025 despite having sufficient medical documentation to support the requests.

86. Defendant offered only ineffective alternative accommodations such as a shared office, which would not reduce Plaintiff's exposure to illness.

87. Defendant failed to accommodate Plaintiff's disability.

88. As a direct and proximate result of Defendant's failure to accommodate her disability, Plaintiff has suffered and continues to suffer economic damages, including loss of wages due to forced use of sick leave and unpaid leave.

89. As a direct and proximate result of Defendant's failure to accommodate her disability, Plaintiff has suffered and continues to suffer non-economic damages, including physical illness, pain and suffering, emotional distress, anxiety, and fear of discipline.

90. As a direct and proximate result of Defendant's failure to accommodate

her disability, Plaintiff has been denied her civil right to full and equal employment opportunities.

## COUNT II
### Disability Discrimination In Violation Of The Ada

91.    Plaintiff incorporates by reference all preceding paragraphs.

92.    The ADA prohibits covered entities from discriminating against qualified individuals on the basis of disability with respect to job application procedures, hiring, advancement, discharge, compensation, job training, and other terms, conditions, and privileges of employment 42 USCS § 12112.

93.    The ADA defines a "qualified individual" as an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires 42 USCS § 12111.

94.    Plaintiff was qualified for her position because she performed her duties, regularly met or exceeded expectations, received positive performance feedback.

95.    Plaintiff has a disability within the meaning of the ADA, including multiple sclerosis and related impairments that substantially limit one or more major life activities, including immune system function.

96.    Defendant had knowledge of Plaintiff's disability through repeated medical documentation submitted by Plaintiff and her healthcare providers in connection with her accommodation requests.

97.   Despite Plaintiff's ability to successfully perform the essential functions of her position, with or without reasonable accommodation, Defendant denied Plaintiff's requests to work fully remotely and failed to provide an effective accommodation for her disability.

98.   Defendant discriminated against Plaintiff on the basis of disability by denying her reasonable accommodation requests, subjecting her to unequal terms and conditions of employment, and requiring her to continue working in conditions that exacerbated her disability and caused repeated illness.

99.   Defendant's conduct constitutes disability discrimination in violation of the ADA.

100.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, medical harm, and other damages .

### COUNT III
### Disability Retaliation In Violation Of The ADA

101.   Plaintiff incorporates by reference all preceding paragraphs.

102.   The ADA prohibits discrimination against an individual because that individual opposed an act or practice made unlawful by the ADA or because that individual made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the ADA 42 USCS § 12203.

103.   Plaintiff engaged in protected activity by requesting reasonable accommodations for her disability in July 2023, December 2024, and January 2025,

opposing discrimination, and by filing a Charge of Discrimination with the Michigan Department of Civil Rights and the EEOC on or about January 23, 2025.

104. Defendant was aware of Plaintiff's protected activity because it received and processed Plaintiff's accommodation requests, participated in the interactive process, and was notified of Plaintiff's discrimination charge

105. Following Plaintiff's protected activity, Defendant continued to deny Plaintiff's requests for accommodation, repeatedly demanded duplicative medical information, and ultimately denied her February 2025 accommodation request.

106. To this day, Defendant continues to punish Plaintiff for the need to take sick leave – a need created by Defendant's discriminatory behavior.

107. The close temporal proximity between Plaintiff's protected activity and Defendant's continued denial of accommodations, together with Defendant's pattern of obstructing the interactive process, supports a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

108. Defendant's conduct constitutes retaliation in violation of the ADA 42 USCS § 12203.

109. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, medical harm, and other damages

**COUNT IV**
**Disability Discrimination In Violation Of The Michigan Persons With Disabilities Civil Rights Act**

110.   Plaintiff incorporates by reference all preceding paragraphs.

111.   The Michigan Persons with Disabilities Civil Rights Act guarantees the opportunity to obtain employment without discrimination because of a disability. MCLS § 37.1102

112.   Plaintiff has a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

113.   Plaintiff was qualified for her position as a Departmental Analyst and performed all essential functions successfully.

114.   Defendant subjected Plaintiff to adverse employment actions including but not limited denying her reasonable accommodation requests in July 2023 and February 2025, forcing her to repeat processes unnecessarily and ultimately to deny, and forcing her to work under sub-par conditions.

115.   Defendant knew or had reason to know of Plaintiff's disability through the medical documentation provided by Plaintiff's physicians.

116.   Non-disabled employees were treated more favorably than Plaintiff with regard to leave requests and accommodation requests, both formal and informal.

117.   Plaintiff's disability was a motivating factor in Defendant's denial of her accommodation requests.

118.   Defendant's stated reasons for denying Plaintiff's accommodation requests were pretextual.

119.   Defendant admitted that no undue hardship would result from granting Plaintiff's requested accommodation.

120.   Defendant's ADA Coordinator stated that "it is Department's policy to deny everything that comes in and deal with it if people take it to court."

121.   As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer economic damages, including loss of wages due to forced use of sick leave and unpaid leave.

122.   As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer non-economic damages, including physical illness, pain and suffering, emotional distress, anxiety, and fear of discipline.

## <u>COUNT V</u>
### Retaliation In Violation Of The Michigan Persons With Disabilities Civil Rights Act

123.   Plaintiff incorporates by reference all preceding paragraphs.

124.   A person shall not retaliate or discriminate against a person because the person has opposed a violation of the Michigan Persons with Disabilities Civil Rights Act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Act. MCLS § 37.1602

125.   Plaintiff engaged in protected activity by requesting reasonable

accommodations for her disability in July 2023, December 2024, and January 2025.

126.    Plaintiff engaged in protected activity by filing a charge of discrimination with the Michigan Department of Civil Rights and the U.S. Equal Employment Opportunity Commission on January 27, 2025.

127.    Defendant was aware of Plaintiff's protected activity.

128.    Following Plaintiff's protected activity, Defendant subjected Plaintiff to adverse employment actions, including denial of her accommodation requests and continued forced exposure to working conditions that caused repeated illness.

129.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken by Defendant.

130.    Defendant's actions were motivated by retaliatory animus toward Plaintiff for opposing disability discrimination and for filing charges of discrimination.

131.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer economic damages, including loss of wages due to forced use of sick leave and unpaid leave.

132.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer non-economic damages, including physical illness, pain and suffering, emotional distress, and anxiety.

## COUNT VI
**Failure To Accommodate Pregnancy-Related Medical Condition In
Violation of The Michigan Persons With Disabilities Civil Rights Act**

133.   Plaintiff incorporates by reference all preceding paragraphs.

134.   A person shall not retaliate or discriminate against a person because the person has opposed a violation of the Michigan Persons with Disabilities Civil Rights Act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Act. MCLS § 37.1602

135.   Plaintiff engaged in protected activity by requesting reasonable accommodations for her disability in July 2023, December 2024, and January 2025.

136.   Plaintiff engaged in protected activity by filing a charge of discrimination with the Michigan Department of Civil Rights and the U.S. Equal Employment Opportunity Commission on January 27, 2025.

137.   Defendant was aware of Plaintiff's protected activity.

138.   Following Plaintiff's protected activity, Defendant subjected Plaintiff to adverse employment actions, including denial of her accommodation requests and continued forced exposure to working conditions that caused repeated illness.

139.   There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken by Defendant.

140.   Defendant's actions were motivated by retaliatory animus toward Plaintiff for opposing disability discrimination and for filing charges of discrimination.

141. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer economic damages, including loss of wages due to forced use of sick leave and unpaid leave.

142. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer non-economic damages, including physical illness, pain and suffering, emotional distress,

## RELIEF REQUESTED

WHEREFORE, Plaintiff Jennifer Keller respectfully requests that this Court enter judgment in her favor and against Defendant Michigan Department of Corrections, and grant the following relief:

a. A declaratory judgment that Defendant's actions violated the American with Disabilities Act and Michigan Persons with Disabilities Civil Rights Act;

b. Compensatory damages for economic losses, including past and future lost wages, in an amount to be determined at trial;

c. Compensatory damages for non-economic losses, including pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life, in an amount to be determined at trial;

d. Injunctive relief requiring Defendant to provide Plaintiff with a reasonable accommodation, specifically to work remotely from home;

e. Injunctive relief requiring Defendant to cease its discriminatory and retaliatory practices;

f. Reasonable attorney's fees and costs as provided by law;

g. Pre-judgment and post-judgment interest as provided by law;

h. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by and through his counsel, hereby demands a trial by jury as to all those issues so triable as of right.

Respectfully submitted,
NACHTLAW, P.C.


/S/ Fabiola A. Galguera
Fabiola Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
101 N. Main St., Suite 555 Ann Arbor,
Michigan 48104 (734) 663-7550

Date: July 28, 2026